**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JO-ANN CALCAGNO, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____<br>) |
| v. | ) CLASS ACTION<br>) |
| ZOE'S KITCHEN, INC., GREG DOLLARHYDE, THOMAS BALDWIN, SUE COLLYNS, CORDIA HARRINGTON, KEVIN MILES, and ALEC TAYLOR, | ) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 17, 2018 (the "Proposed Transaction"), pursuant to which Zoe's Kitchen, Inc. ("Zoe's Kitchen" or the "Company") will be acquired by Cava Group, Inc. and Pita Merger Sub, Inc. (together, "Cava").

2. On August 16, 2018, Zoe's Kitchen's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Cava. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Zoe's Kitchen's shareholders and completed, Zoe's Kitchen's stockholders will receive $12.75 in cash for each share of the Zoe's Kitchen common stock they hold.

3. On October 9, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement, which scheduled a stockholder vote on the Proposed Transaction for November 20, 2018, omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Zoe's Kitchen common stock.

9. Defendant Zoe's Kitchen is a Delaware corporation and maintains its principal executive offices at 5760 State Highway, Suite 650, Plano, Texas 75024. Zoe's Kitchen's common

stock is traded on the NYSE under the ticker symbol "ZOES." Zoe's Kitchen is a party to the Merger Agreement.

10. Defendant Greg Dollarhyde is Chairman of the Board of Zoe's Kitchen.

11. Defendant Thomas Baldwin is a director of Zoe's Kitchen.

12. Defendant Sue Collyns is a director of Zoe's Kitchen.

13. Defendant Cordia Harrington is a director of Zoe's Kitchen.

14. Defendant Kevin Miles is a director of Zoe's Kitchen.

15. Defendant Alec Taylor is a director of Zoe's Kitchen.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Zoe's Kitchen (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

18. This action is properly maintainable as a class action.

19. The Class is so numerous that joinder of all members is impracticable. As of August 15, 2018, there were 19,604,095 shares of Zoe's Kitchen common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

20. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

21. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other

members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

22. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

23. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

24. Founded in 1995, Zoe's Kitchen is a fast-casual restaurant group serving a distinct menu of fresh, wholesome, made-from-scratch, Mediterranean-inspired dishes.

25. The Company has 261 locations in twenty states across the United States.

26. On August 16, 2018, Zoe's Kitchen's Board caused the Company to enter into the Merger Agreement.

27. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Zoe's Kitchen's shareholders and completed, Zoe's Kitchen's stockholders will receive $12.75 in cash for each share of the Zoe's Kitchen common stock they hold.

28. According to the press release announcing the Proposed Transaction:

Zoe's Kitchen, Inc., ("Zoës Kitchen" or the "Company") (NYSE:ZOES), a fast-casual restaurant group with 261 domestic restaurant locations, today announced

that it has entered into a definitive agreement to be acquired in a transaction by privately held Cava Group, Inc., ("CAVA") a fast-growing Mediterranean culinary brand with 66 restaurants. The combined companies will have 327 restaurants in 24 states throughout the U.S.

Under the terms of the agreement, Zoës Kitchen shareholders will receive $12.75 in cash for each share of common stock they hold. This represents a premium of approximately 33% to Zoës Kitchen's closing share price on August 16, 2018 and a premium of approximately 33% to Zoës Kitchen 30-day volume weighted average price ended on August 16, 2018, and an enterprise value of approximately $300 million.

The acquisition of Zoës Kitchen will be financed through a significant equity investment in CAVA led by Act III Holdings, the investment vehicle created by Ron Shaich, founder, chairman, and former CEO of Panera Bread, and funds advised by The Invus Group, with participation from existing investors SWaN & Legend Venture Partners and Revolution Growth.

After closing, Brett Schulman, current Chief Executive Officer of CAVA, will serve as Chief Executive Officer of the combined company and will work closely with the existing leadership teams at Zoës Kitchen and CAVA to oversee their growth and evolution. Ron Shaich will serve as Chairman of the combined company. . . .

TERMS

Consummation of the merger is subject to certain closing conditions, including the adoption of the merger agreement by the holders of a majority of the Company's outstanding common stock, and the expiration or early termination of all applicable waiting periods under the HSR Act. CAVA has agreed to pay to the Company a $17 million termination fee if the merger agreement is terminated under certain circumstances and the merger does not occur. The parties expect the merger to close in the fourth quarter of 2018.

Under the terms of the merger agreement, the Company is permitted to actively solicit, for a 35-day period, alternative acquisition proposals from potential buyer and business combination candidates. There can be no assurance that any superior proposals will be received during this solicitation process or that any alternative transaction providing for a superior proposal will be consummated. Except as may be required by law, the Company does not intend to disclose any developments with respect to such a solicitation process unless and until the Company's board of directors determines that it has received a superior proposal. The Company would be required to pay to CAVA an $8.5 million termination fee if the Company terminates the merger agreement to accept a superior proposal under certain circumstances.

> The Company's Board of Directors has determined that the merger agreement with CAVA is fair to and in the best interests of the Company and the holders of the Company's common stock.
>
> Zoës Kitchen also announced that it will not hold its previously scheduled second quarter 2018 earnings conference call and web simulcast on the morning of Friday, August 17 and will not issue a press release with second quarter 2018 financial results. The Company expects to file its quarterly report with second quarter 2018 financial results on or before August 20, 2018.

29. Up to $125 million of the funding for the Proposed Transaction is committed by Ronald M. Shaich ("Shaich"), a director of Cava, to Act III Holdings, LLC, a newly-formed investment entity solely managed by Shaich.

30. According to the Proxy Statement, as of June 18, 2018, Shaich was a holder of limited partnership interests in Misada Capital Flagship Fund LP, which holds an approximately 16.8% ownership position in the Company.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

31. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for November 20, 2018.

32. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

33. First, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Piper Jaffray & Co. ("Piper Jaffray").

34. With respect to Piper Jaffray's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the estimated net operating loss balance at fiscal year 2022; (ii) the terminal values of the Company; and (iii) the specific inputs and assumptions underlying the

discount rates ranging from 9.2% to 14.2%.

35. With respect to Piper Jaffray's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Piper Jaffray in the analysis.

36. With respect to Piper Jaffray's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Piper Jaffray in the analysis.

37. With respect to Piper Jaffray's Premiums Paid Analysis, the Proxy Statement fails to disclose the transactions observed by Piper Jaffray in the analysis as well as the premiums paid in such transactions.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39. Second, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained "don't ask, don't waive" provisions that are or were preventing the counterparties from requesting waivers of standstill provisions to submit superior offers to acquire the Company.

40. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

41. Third, the Proxy Statement fails to disclose that Shaich will serve as Chairman of the combined company, as well as the timing and nature of all negotiations regarding Shaich's future role as Chairman.

42. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Company's Board of Directors; (iii) Prospective Financial Information; and (iv) Opinion of Piper Jaffray & Co.

43. The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Zoe's Kitchen

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Zoe's Kitchen is liable as the issuer of these statements.

46. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

47. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

49. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Zoe's Kitchen within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Zoe's Kitchen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

56. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 11, 2018  **RIGRODSKY & LONG, P.A.**

  By: */s/ Gina M. Serra*
  Brian D. Long (#4347)
**OF COUNSEL:**  Gina M. Serra (#5387)
  300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**  Wilmington, DE 19801
Richard A. Maniskas  Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300  Facsimile: (302) 654-7530
Berwyn, PA 19312  Email: bdl@rl-legal.com
Telephone: (484) 324-6800  Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com  *Attorneys for Plaintiff*